Case number 5 is Malukas v. Barr Good morning, your honors. May it please the court, my name is Maria Theresa Baldini-Potterman and I represent Henrikas Malukas in this matter. As a stateless individual now, petitioner seeks reversal of the Board of Immigration Appeals' denial of his motion to reopen Sua Sponte for adjustment of status based on his U.S. citizen daughter's immigrant visa petition to become a lawful permanent resident. I must say, counsel, I don't even understand the concept. What is a motion to reopen Sua Sponte other than an oxymoron? Your honor, Sua Sponte means that the board can reopen on its own under a regulation. But to reopen on your own, you have to do it on your own. If you do something in response to a motion, then it's in response to a motion. And I draw this distinction because that's what the Supreme Court held in a case called Calderon v. Thompson, dealing with whether a court Sua Sponte can rehear an order denying leave to file a second or successive collateral attack. The Supreme Court said if the court is doing this in response to a motion, that's just a prohibited second motion. And you seem to think, certainly not alone among people in the Seventh Circuit, that you can file such a thing as a motion to reopen Sua Sponte and the number and time limits just, well, they vanish. But that would require us to include the number of motions to reopen. This was actually Petitioner's first motion to reopen. He had previously filed a motion to reconsider from the board's denial of his direct appeal in 2003. The statute does provide that an alien may file one motion to reopen within 90 days. He is far outside the 90 days. I refer generally to time and number. It doesn't mean that every motion is barred by both. But this one is certainly barred as untimely. Agreed, Your Honor, that it is an untimely motion to reopen under the statute. Exactly. The point I'm making is, under the Supreme Court's approach, timeliness doesn't go away when you just stick the words Sua Sponte after the phrase motion to reopen. It's still a problem. And Your Honor, because the board has the regulation, Mr. Malukas requested that the board essentially look at the new evidence and new arguments that were presented. Right. And I guess, let me ask this from a slightly different angle. The board obviously has the power to do that. You seem to be arguing for fairly rigorous judicial review of the exercise to use that discretion or not. And I guess I'm a little unclear how your position differs about how we should approach the review of a denial of a motion for Sua Sponte reopening from just an unlimited ability to seek reconsideration without time limits or number limitations. So, Your Honor, with respect to reconsideration, that is a separate part of the statutory scheme laid out by Congress. Reopening. Reopening. Thank you, Your Honor. Sorry, let's just stick with reopening. You seem to be urging a level of judicial review that would be no different from simply removing the time and number restrictions on motions to reopen. Your Honor, we are not arguing that the board is incorrect in putting in the exceptional circumstance requirement, which is part of the regulation for Sua Sponte reopening, as the board phrases it. We believe that in this particular case, there is a front and center exceptional circumstance. So, Mr. Malukas, we take the position that he is stateless. Lithuania has not issued a travel document to him despite repeated requests by Mr. Malukas and by ICE since 2004 when he was placed on the order of supervision by ICE itself. He has reported every year. He cannot leave the country to consular process. And as part of its case law, the board has held a matter of JJ that a motion to reopen Sua Sponte is not to be a means to circumvent other regulations or other processes. In this particular case, he cannot avail himself of consular processing because he cannot get a travel document to be able to leave the United States. That sets this apart, Your Honor, from the other myriad of motions to reopen that this court sees, which petitioners seek review. In addition, Your Honors, with respect to the board's prior decisions from 2003, the circumstances and the new facts presented are that Mr. Malukas now has had 25 years without any other encounter with law enforcement. He has lived an exemplary life. He's a member of the Nativity Blessed Virgin Church for 20 years. He now has four companies. These are not arguments to a court of appeals. These are arguments you might make to immigration officials. Tell you what, let's draw a parallel. Suppose somebody files a motion in the court of appeals saying motion to recall the mandate Sua Sponte. What does the court of appeals have to say in response? I don't know the answer, Your Honor, to that question. I think what we actually say is nothing. We just say denied. Are we violating a statute, a rule, the Constitution by just saying denied? I don't believe so, Your Honor. I have heard of practitioners who have filed such a mandate before, a request for the mandate to be recalled. Can you just illuminate the circumstances having to do with Lithuania's refusal to issue a travel document? It sounds like Mr. Malukas is stateless, but he stays in the United States for the time being, indefinitely, right? Yes, Your Honor. We have this issue arising with some other countries on a very large scale. China comes to mind. But what's going on? So the process, Your Honor, has been that Mr. Malukas himself sent paperwork to the embassy requesting a travel document. ICE sends requests as well requesting a travel document, and the Lithuanian embassy has not responded. In the order of supervision which was provided and is at administrative record page 69, the first entry on there is dated March 15, 2004, and there's a note that the subject reported in person per order of supervision, Lithuanian consul to determine citizenship. Next report date is 2004. And the report dates continue on, and it's clear that no travel document has been requested, Your Honor. In this particular instance, I just do want to point out to the court that if this court were to reverse the board and send this case back down, Mr. Malukas is permanently barred from naturalization. So if the board were to reconsider its decision on its own motion, reopen the case, and send it back to an immigration judge, Mr. Malukas, if he's granted adjustment of status, will never be eligible for citizenship. He is barred as a result of his 1995 conviction for three counts that involved what are classified under immigration law as aggravated felonies. Under 8 U.S.C. 1101 F6, anyone who has been convicted of an aggravated felony on or after November 30, 1990 is permanently ineligible for citizenship. So we ask that this court... How does that affect our analysis? Your Honor, as I stated earlier, he is currently stateless, so he cannot consular process to obtain his permanent residence status in any other manner. He is eligible to apply for adjustment of status before an immigration judge if this court were to reverse the board and to send his case back. In this particular decision, the board gave absolutely no rationale for its decision. It issued one sentence saying, we don't find it meets the standards. End of discussion. Whereas in its 2003 decisions, in each decision, the board actually looked at the factors and enunciated the factors and demonstrated how it weighed the evidence. I see that my time is up. Thank you. Thank you, counsel. Mr. Batchelor. Good morning, Your Honor. Jacob Batchelor on behalf of the Attorney General of the United States. So at the outset, I would like to address the issue of Mr. Malukas being stateless. So he submitted evidence, a letter from Lithuania stating that his wife is no longer a Lithuanian citizen. But there's nothing in the record indicating that he is, in fact, no longer a Lithuanian citizen. So it's, I guess... I gather Lithuania is unwilling to take him back. That's correct, Your Honor. Why are we having this debate? I mean, it sounds like he's going to be able to stay in the United States indefinitely, but just with great insecurity. Based upon what I represented to the Department of Justice, is basically they're actively seeking to remove him from the United States. And in some cases, they actually are capable to remove people to Lithuania. However, this case, for whatever reason, is unusual. I cannot speculate as to why. Are there ongoing negotiations between the United States and Lithuania about their policy toward their nationals in the U.S.? I cannot represent that to the Court. As to this particular case, I simply... Is that because you don't know or because it's secret? I do not know. I don't have this information. That's a different answer from, there aren't any. So I do not know the answers to whether there is any high-level negotiation at this particular point. Or any low-level negotiations. One would think that diplomacy is the way to deal with other nations that won't take their nationals back. That's correct. But in this particular case, what we have is that ISA makes, from what they inform us, attempts to secure documents, and apparently it's not, so far it didn't... How are they seeking to actively remove him, then? Well, they're apparently trying to get the travel document. That's what they, once again, informed me, that they are trying to get the Lithuanian government to issue a travel document at this particular point. Has Lithuania asked for further documentation or something else before accepting him? I do not know that. I don't have this information. So the second question is dealing with the jurisdiction over this particular case. And so sponsoring the opening, and as this court said repeatedly, it doesn't have jurisdiction. Only in limited circumstances, and those circumstances were discussed in, I think, the two pivotal cases, Fuller and Iglesias, the two cases where the court really dealt with the situation where the board applied the incorrect standard or mischaracterized the evidence that was submitted to respond to reopening. But those two cases are different from this case because this is a discretionary denial of adjustment of status. So, number one, there is a jurisdictional bar before we get to a motion to reopen because there are procedural requirements for reopening, as the court pointed out. It has to be 90 days, and it has to... And also there's a number restriction, right? So before we even get to that point, the court lacks jurisdiction because he's an aggravated felon, and his adjustment of status application was denied in exercise of discretion. Both of those subject to the board contained in ATUC 1252. Then if we get to the other... If a legal error was made, would you agree we have jurisdiction? Yes, in Fuller and Iglesias, both of the cases say that if there is a legal error, as... I understand the government is not wild about those holdings, but... Well, that's the ruling of this court, and we have to accept it. I understand, in fact, that the Solicitor General is contesting them in the Supreme Court this very term. Well, once again, it's a highly contested issue because it's not only, I guess, in... No, look, I understand the Solicitor General views Seventh Circuit case law as not compatible with the statute. The Supreme Court will tell us whether it is or it isn't. Well, that's... We'll leave it to the Supreme Court, I guess. How does this case differ from Iglesias? So, in Iglesias, the ALN submitted approval, I-130, and apparently the board, when it discussed the evidence related to that I-130 petition, relied only on DHS evidence stating that basically... Not DHS evidence, DHS argument, stating that it was not a bona fide marriage. And the board failed to address petitioners... Not petitioners, the ALN's arguments and evidence, and the court found that it was a legal error, but it found it harmless because when it looked at the evidence, there's nothing in the record that was submitted by the ALN showed that the marriage, in fact, was bona fide. And so it brings us to Fuller, and Fuller is another case where the board stated that the evidence submitted by the ALN did not material alter the outcome of the case, and the court found that basically the board's decision mischaracterized the evidence, and it was a legal error that the court said justified remand of the case back to the board. In the incident case, we have... First initial, we have initial IJ's decision, immigration judge's decision, that says that his adjustment of status application was denied because of discretion, which was... The fact is that he never acknowledged his involvement into the crime, such as... Well, basically, what happened? What was his role, right? So then there was a board's decision affirming the immigration judge's decision, and it says the same thing, that discretion was exercised in the case because of other equities, but there's still no acknowledgement of the petitioner's involvement in the crime. Motion to reconsider. It appears the same thing. Now we have another motion to reconsider and motion to reopen sua sponte. The evidence, once again, produces a three-legged stool, family ties, business ties, and the fact is that he is informed, right? But there's still no discussion. What was Mr. Maloukas' role in the exporting, attempted to export firearms into Lithuania, small arsenal, and why was it sent? Why was it something else? But, you know, that's basically the issue that the board was confronted with. So there's plenty of evidence as to why Mr. Maloukas should be with the equities in the case, but then as to the other side of discretion in their analysis. So it's very lopsided. So there's evidence that, yes, there's a lot of equities, but there's no evidence that acknowledging that his involvement, and he submitted an affidavit on pages 199 through 204 of the administrative record that talks about, that acknowledges that what he did was wrong and shows remorse, but once again, there is no discussion of how it was his acknowledgement of his involvement in the crime. So that's why I guess when we look at the board decision, what it says is basically acknowledges that on page 3, it says, we also have this motion to reopen sua sponte and based upon eligibility to adjust status. It cites through the pages in the record pages so that his motion to reconsider, I believe, is pages 40 to 43, right? And then, so his motion was in pages 20 to 21 when it was submitted, but in the record, it's 40 to 43. And then at the end, it says we deny because basically there is no exceptional circumstances. I don't understand why there's no exceptional circumstances. Is it correct that Mr. Malukas employs about 500 people? Based on the evidence that he produced, yes. I realize it may be beyond our jurisdiction, but under these circumstances, it's hard to see this case as a priority for the government. That's correct. So this particular point, because once again, I informed the court that the government is still trying to effect jury removal, but we don't know when it's going to happen, so I cannot represent to the court as to what's going to happen in the near future in this particular case. So if you owners don't have any further questions, I submit in the brief submitted. May I be excused? Thank you, counsel. Thank you. The case is taken under advisement.